MAJORITY OPINION
ADELE HEDGES, Chief Justice.
In this case, we are asked to determine whether the trial court erred in enforcing
*566 tends to do an act that would breach the restrictive covenant.” Id. We review a trial court’s interpretation of the law de novo. In re Dep't of Family & Protective Servs., 273 S.W.3d 637, 642 (Tex.2009). A trial court has no discretion in determining what the law is or properly applying the law. Id. If the trial court fails to properly interpret the law or applies the law incorrectly, it abuses its discretion. Id. at 642-43.
IV. Analysis
A. The Property Code and Community Homes Act
We begin our analysis with chapter 202 of the Texas Property Code. Section 202.002, which pertains to enforcement of restrictive covenants, provides as follows:
(a) This chapter applies to all restrictive covenants regardless of the date on which they were created.
(b) This chapter does not affect the requirements of the Community Homes for Disabled Persons Location Act (Article 101 In, Vernon’s Texas Civil Statutes).
Tex. Prop. Code Ann. § 202.002 (Vernon 2007).
Section 202.003(b) further provides:
In this subsection, “family home” is a residential home that meets the definition of and requirements applicable to a family home under the Community Homes for Disabled Persons Location Act (Article lOlln, Vernon’s Texas Civil Statutes). A dedieaiory instrument or restrictive covenant may not be construed, to prevent the use of property as a. family home. However, any restrictive covenant that applies to property used as a family home shall be liberally construed to give effect to its purposes and intent except to the extent that the construction would restrict the use as a family home.
Id. § 202.003 (footnote omitted) (emphasis added).
We must compare these provisions with the Community Homes Act, which provides in relevant part:
(a) The use and operation of a community home that meets the qualifications imposed under this chapter is a use by right that is authorized in any district zoned as residential.
(b) A restriction, reservation, exception, or other provision in an instrument created or amended on or after September 1, 1985, that relates to the transfer, sale, lease, or use of property may not prohibit the use of the property as a community home.
Tex. Hum. Res. Code Ann. § 123.003 (Vernon 2001).
B. Reconciliation of the Statutes
We now determine which statute controls the enforcement of the instant restrictive covenant: the Property Code provision providing for universal coverage or the Human Resources Code provision that controls only those covenants created or amended on or after September 1,1985. See Tex. Prop. Code Ann. §§ 202.001-.002; Tex. Hum. Res. Code Ann. § 123.003. Chapter 202 of the Texas Property Code generally controls the enforcement of restrictive covenants. See Tex. Prop. Code Ann. § 202.002(a). However, chapter 202 yields to the Community Homes Act. See id. § 202.002(b) (“This chapter does not affect the requirements of the Community Homes for Disabled Persons Location Act....”).
The Community Homes Act limits the enforceability of public and private regulations preventing the use of property as a community home. See Tex. Hum. Res. Code Ann. § 123.003. Section 123.003(a) *567 applies to city zoning regulations while section 123.003(b) applies to private regulations such as restrictive covenants. See id. § 123.003(a), (b). More specifically, section 123.003(a) allows property “zoned as residential” to be used as a community home. This right to use residentially-zoned property as a community home is a limitation on city zoning regulations and enforcement thereof. Because section 123.003(a) applies only to zoning regulations restricting the use of property as a community home and the Neighbors seek to enforce a private restrictive covenant, section 123.003(a) is not applicable to this case.
By contrast, section 123.003(b) limits the enforceability of private covenants. Looking forward at the time of its effective date, section 123.003(b) provides that as of September 1, 1985, private covenants restricting the use of property as a community home are not enforceable. The instant restrictive covenant, adopted in 1965, would appear to avoid the restrictions of section 123.003(b) absent contrary controlling authority such as section 202.003(b) of the Texas Property Code. We must therefore reconcile the conflicting language of these two statutes.
Section 202.003(b) of the Property Code provides that “[a] dedicatory instrument or restrictive covenant may not be construed to prevent the use of property as a family home.”[1] Tex. Prop. Code Ann. § 202.003(b). The tension between section 202.003(b) of the Texas Property Code and section 123.003(b) of the Human Resources Code is readily apparent with respect to enforceability of a restrictive covenant depending on the date in which the covenant was created. The Human Resources Code bars enforcement of a covenant restricting the use of property as a community home created after September 1, 1985, while the Property Code bars enforcement of the same covenant regardless of the date in which the instrument was created. Because section 202.003(b) is the later statute, enacted in 1987, its general prohibition controls the less restrictive section of 123.003(b) passed in 1985. We conclude that the universal applicability of the Property Code’s section 202.003(b) controls if the use of property comports with definition of a community home articulated in the Human Resources Code. Applying section 202.003(b), we further conclude that the disputed restrictive covenant is enforceable to the extent that the Meehls
*570 its issuance of a permanent injunction constitutes an abuse of discretion. Contrary to the trial court’s analysis, the deed restriction must yield to the Foundation’s right to operate a community home in accordance with the Community Homes Act. We therefore sustain appellants’ second, third, fourth, eighth, and ninth issues; dissolve the permanent injunction; and reverse the trial court’s judgment.
D. Standing to Assert Fair Housing Act Claims
In their fifth issue, appellants ask “whether the court erred as a matter of law when it concluded that the Meehls were not [in] a protected class within the meaning of the Federal Fair Housing Act” (“the FHA”). Appellants presented un-controverted evidence that Mark Meehl has a history of bipolar illness which prevents him from working; thus, he has a “handicap” as defined by the FHA. See 42 U.S.C.A. § 3602(h) (defining “handicap” to include a physical or mental impairment which substantially limits one or more of the person’s major life activities, a record of having such an impairment, or being regarded as having such an impairment). We therefore sustain appellants’ fifth issue as it pertains to Mark Meehl. Regarding Debra Meehl and the Foundation, however, appellants presented no evidence that they are handicapped as that term is used in the FHA, and appellants have identified no other protected class to which Debra Meehl and the Foundation allegedly belong. Thus, we overrule appellants’ fifth issue as it applies to Debra Meehl and the Foundation.
The balance of appellants’ argument is less than clear. According to appellants, “the essential issue that the court’s finding appears to raise is whether the Meehls have standing under the FHA to challenge [the Neighbors’] discriminatory actions.” But membership in a protected class is not a prerequisite for standing to assert a claim under the Fair Housing Act. Moreover, the trial court did not rule that any appellant lacked standing to assert such a claim.[4] We overrule appellants’ fifth issue as it applies to Debra Meehl and the Foundation.
E. Merits of Fair Housing Act Claims
In their sixth and seventh issues, appellants challenge the trial court’s finding that they failed to show that a federal Fair Housing Act (“FHA”) discrimination had occurred or would occur as a result of the enforcement of the deed restriction. In support of this argument, appellants rely on sections 3604(f)(1), (2), and (3)(B) of the FHA, which make it unlawful:
(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
(A) that buyer or renter,
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with" that buyer or renter.
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in *571 connection with such dwelling, because of a handicap of—
(A) that person; or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that person.
(3) For purposes of this subsection, discrimination includes—
[[Image here]]
(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling....
42 U.S.C.A. § 3604(f)(1), (2), & (3)(B). We note that these provisions do not apply to “rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.” Id. § 3603(b)(2). “ ‘Family’ includes a single individual.” 42 U.S.C.A. § 3602(c). Here, it is undisputed that the Meehls’ house is a single-family residence in which the Meehls reside, and that it is occupied or intended to be occupied by no more than four families living independently from one another. Thus, section 3604(f) does not apply to the Meehls’ residence.
Although appellants cite no other provision of the FHA, they also rely on cases that apply section 3617, which provides:
It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.
42 U.S.C.A. § 3617; see, e.g., United States v. Wagner, 940 F.Supp. 972 (N.D.Tex.1996); Deep E. Tex. Reg’l. Mental Health & Mental Retardation Servs. v. Kinnear, 877 S.W.2d 550 (Tex.App.-Beaumont 1994), rev’d in part on other grounds by Kinnear v. Tex. Comm’n on Human Rights ex rel. Hale, 14 S.W.3d 299 (Tex.2000) (per curiam). However, appellants provide no argument and cite no evidence indicating that the Neighbors have engaged in any prohibited conduct in connection with the exercise or enjoyment, by appellants or their prospective clients, of rights granted or protected by any of the four specified provisions of the FHA.
Section 3603(b)(2) exempts resident homeowners from the protections of all provisions of section 3604 with the exception of subsection (c). 42 U.S.C.A. § 3603(b)(2). Pursuant to subsection 3604(c), it is unlawful:
To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
42 U.S.C.A. § 3604(c). Appellants, however, do not contend that the Neighbors caused any such statement to be made, printed, or published. Section 3605 applies to discrimination by those whose business includes residential real estate-related transactions (such as making or purchasing loans, selling, brokering, or appraising residential real property), and section 3606 applies to discrimination in the provision of. brokerage services. 42

. Under section 123.003(b), a restrictive covenant cannot prevent the use of property as a family home. Although the Meehls seek to use their property as a community home, family home and community home are one in the same. When section 123.003(b) was enacted in 1987, the Community Homes Act defined a "family home” as follows:
"Family home" means a community-based
residential home operated by:
(A) the department;
(B) a community center organized under Section 3.01, Texas Mental Health and Mental Retardation Act (Article 5547-203, Vernon's Texas Civil Statutes), which provides services to disabled persons;
(C) a nonprofit corporation; or
(D)an entity certified by the Texas Department of Human Resources as a provider under the intermediate care facilities for the mentally retarded program.
Act of May 15, 1985, 69th Leg., R.S., ch. 303, §§ 4, 5, 1985 Tex. Gen. Laws 1355, 1356. Curiously, such homes were referred to as "community homes” in the title of Act and as "family homes” in the body of Act. When the Act was recodified in 1991, this inconsistency was corrected, and the term "community home” replaced "family home” in the body of the Act. Compare id. with Tex. Human Res Code Ann § 123.004(1). Thus, the "family home” of 1987 is the "community home” of today; the definition of both terms includes "a community-based residential home” operated by one of four entities or types of entities.

. See id. §§ 3602(d) (defining "person” to include "corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries”); 3602(i) (defining an "aggrieved person” as one who allegedly has been or will be injured by a discriminatory housing practice); 3613(a)(1)(A) (permitting an aggrieved person to file a civil action).